**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHRISTIAN FISCHER**, **RENARD** | ) | |
| **BATU, ANTHONY SEGUNA, and** | ) | JURY TRIAL DEMANDED |
| **LESLIE PIER** | ) | |
| On Behalf of Themselves And All | ) | |
| Others Similarly Situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case no.: |
| | ) | |
| **ALLIED FIRST BANK, S.B.,** | ) | |
| **ALLIED FIRST BANCORP, INC.,** | ) | |
| **SERVBANK, SB, and SERVBANK** | ) | |
| **HOLDCO, INC.** | ) | |
| | ) | |
| Defendants. | ) | |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiffs Christian Fischer, Renard Batu, Anthony Seguna, and Leslie Pier on behalf of themselves and all others similarly situated, by and through counsel, for their Complaint against Defendants Allied First Bank, S.B., Allied First Bancorp, Inc., Servbank, SB, and Servbank Holdco, Inc. (collectively as "AFB" or "Defendants") state as follows:

## PRELIMINARY STATEMENT

1.    Plaintiff Christian Fischer is a former AFB Mortgage Loan Originator ("MLO"). She sold mortgages to individual customers primarily over the telephone and internet. AFB treated her and other MLOs as exempt, commission only employees, and AFB refused to pay them minimum wages and overtime.

2.      Plaintiff Renard Batu is a former AFB "Non Producing Team Manager" ("NPM").  AFB treated him and other NPMs as exempt employees, and AFB refused to pay them minimum wages and overtime.

3.      Plaintiff Anthony Seguna is a former AFB "Producing Team Manager" ("PM").  AFB treated him and other PMs as exempt employees, and AFB refused to pay them minimum wages and overtime.

4.      Plaintiff Leslie Pier is a former AFB Loan Processor ("Processors") and MLO.  AFB treated her and other Processors as exempt employees, and AFB refused to pay them minimum wages and overtime.

5.      AFB likewise failed to pay Leslie Pier and other employees for their accrued, unused vacation when they left AFB which violated the Illinois Wage Payment and Collection Act ("IWPCA").

6.      This is a collective and class action brought by Individual and Representative Plaintiffs Christian Fischer, Renard Batu, Anthony Seguna, and Leslie Pier on their own behalf, and on behalf of the proposed FLSA collectives and Rule 23 state law classes.

7.      Plaintiff Christian Fischer and the putative collective and class members are or were employed by AFB as "mortgage loan originators," "loan officers," "loan originators," and in similar job titles, and were denied overtime and/or minimum wage compensation as required by the Fair Labor Standards Act ("FLSA") and Illinois laws. These employees are similarly situated under the FLSA, 29 U.S.C. § 216(b), and  Federal Rule of Civil Procedure ("Rule") 23.

8.      The MLO FLSA Collective is made up of all persons who are, have been, or will be employed by Defendants as "mortgage loan originators," "loan officers," "loan

originators," or similar job titles (collectively as "MLOs"), within the United States at any time within the last three years plus applicable tolling (the "Collective Period"). MLOs who opted into the *Gabe v. Allied First Bank, S.B., et al,* 1:23-cv-914 case are ineligible to join the FLSA MLO Collective.

9.  The MLO Illinois Class is made up of all persons who are, have been, or will be employed by Defendants as "mortgage loan originators," "loan officers," "loan originators," or similar job titles, within three years of the filing of this Complaint plus applicable tolling through the date of final disposition of this action (the "Illinois Class Period"). MLOs who opted into the *Gabe v. Allied First Bank, S.B.*, et al, 1:23-cv-914 case are ineligible to join the MLO Illinois Class.

10. During the Collective Period and the Illinois Class Period, Defendants failed to pay minimum wage and/or overtime compensation to each member of the MLO FLSA Collective and MLO Illinois Class as required by the FLSA and Illinois state law. Plaintiff Fischer seeks relief for the MLO Illinois Class under the Illinois Minimum Wage Law ("IMWL") 820 ILCS 105/1 *et seq.* and for the MLO FLSA Collective under the FLSA, to remedy Defendants' failure to pay all wages due, pay appropriate minimum wage and overtime compensation, and maintain and distribute accurate time records.

11. AFB's policy and practice are to deny earned wages, including minimum wage and/or overtime pay, to its MLOs. In particular, AFB requires these employees to perform work in excess of forty (40) hours per week but fails to pay them minimum wage and/or overtime by illegally misclassifying such employees.

12. Plaintiff Renard Batu, and the putative collective and class members are or were employed by AFB as "nonproducing team managers," and in similar job titles, and were denied

overtime and/or minimum wage compensation as required by the Fair Labor Standards Act ("FLSA") and Illinois laws. These employees are similarly situated under the FLSA, 29 U.S.C. § 216(b), and Federal Rule of Civil Procedure ("Rule") 23.

13. The NPM FLSA Collective is made up of all persons who are, have been, or will be employed by Defendants as "nonproducing team managers" or similar job titles (collectively as "NPMs"), within the United States at any time within the Collective Period.

14. The NPM Illinois Class is made up of all persons who are, have been, or will be employed by Defendants as "nonproducing team managers," or similar job titles, within the "Illinois Class Period.

15. During the Collective Period and the Illinois Class Period, Defendants failed to pay minimum wage and/or overtime compensation to each member of the NPM FLSA Collective and NPM Illinois Class as required by the FLSA and Illinois state law. Plaintiff Batu seeks relief for the NPM Illinois Class under the Illinois Minimum Wage Law ("IMWL") 820 ILCS 105/1 *et seq.* and for the NPM FLSA Collective under the FLSA, to remedy Defendants' failure to pay all wages due, pay appropriate minimum wage and overtime compensation, and maintain and distribute accurate time records.

16. AFB's policy and practice are to deny earned wages, including minimum wage and/or overtime pay, to its NPMs.  In particular, AFB requires these employees to perform work in excess of forty (40) hours per week but fails to pay them minimum wage and/or overtime by illegally misclassifying such employees.

17. Plaintiff Anthony Seguna, and the putative collective and class members are or were employed by AFB as "producing team managers," and in similar job titles, and were denied overtime and/or minimum wage compensation as required by the Fair Labor Standards Act

("FLSA") and Illinois laws. These employees are similarly situated under the FLSA, 29 U.S.C. § 216(b), and Federal Rule of Civil Procedure ("Rule") 23.

18.     The PM FLSA Collective is made up of all persons who are, have been, or will be employed by Defendants as "producing team managers" or similar job titles (collectively as "PMs"), within the United States at any time within the Collective Period.

19.     The PM Illinois Class is made up of all persons who are, have been, or will be employed by Defendants as "producing team managers," or similar job titles, within Illinois Class Period.

20.     During the Collective Period and the Illinois Class Period, Defendants failed to pay minimum wage and/or overtime compensation to each member of the PM FLSA Collective and PM Illinois Class as required by the FLSA and Illinois state law. Plaintiff Seguna seeks relief for the PM Illinois Class under the Illinois Minimum Wage Law ("IMWL") 820 ILCS 105/1 *et seq.* and for the PM FLSA Collective under the FLSA, to remedy Defendants' failure to pay all wages due, pay appropriate minimum wage and overtime compensation, and maintain and distribute accurate time records.

21.     AFB's policy and practice are to deny earned wages, including minimum wage and/or overtime pay, to its PMs.  In particular, AFB requires these employees to perform work in excess of forty (40) hours per week but fails to pay them minimum wage and/or overtime by illegally misclassifying such employees.

22.     Plaintiff Leslie Pier and the putative collective and class members are or were employed by AFB as "loan processors," "processors," and in similar job titles, and were denied overtime and/or minimum wage compensation as required by the Fair Labor Standards Act

("FLSA") and Illinois laws. These employees are similarly situated under the FLSA, 29 U.S.C. § 216(b), and Federal Rule of Civil Procedure ("Rule") 23.

23. The Loan Processor FLSA Collective is made up of all persons who are, have been, or will be employed by Defendants as "loan processors," "processors," or similar job titles (collectively as "Loan Processors"), within the United States at any time within the Collective Period.

24. The Loan Processor Illinois Class is made up of all persons who are, have been, or will be employed by Defendants as "loan processors," "processors," or similar job titles, within the Illinois Class Period.

25. During the Collective Period and the Illinois Class Period, Defendants failed to pay minimum wage and/or overtime compensation to each member of the Loan Processor FLSA Collective and Loan Processor Illinois Class as required by the FLSA and Illinois state law. Plaintiff Pier seeks relief for the Loan Processor Illinois Class under the Illinois Minimum Wage Law ("IMWL") 820 ILCS 105/1 *et seq.* and for the Loan Processor FLSA Collective under the FLSA, to remedy Defendants' failure to pay all wages due, pay appropriate minimum wage and overtime compensation, and maintain and distribute accurate time records.

26. AFB's policy and practice are to deny earned wages, including minimum wage and/or overtime pay, to its Loan Processors. In particular, AFB requires these employees to perform work in excess of forty (40) hours per week but fails to pay them minimum wage and/or overtime by illegally misclassifying such employees.

27. Plaintiff Pier also brings Rule 23 class action claims under the IWPCA for AFB's failure to pay out accrued, unused vacation time when she and other employees left AFB. These

employees are similarly situated are required by Rule 23 given AFB's refusal to pay out the legally required vacation pay despite the fact that AFB's employee handbook states "[u]pon termination, eligible employees will be paid for accrued but unused vacation."

28. AFB's deliberate illegal treatment of its MLOs, NPMs, PMs, and Loan Processors which denies them minimum wage and/or overtime compensation and/or vacation time pay results in AFB violating the FLSA, the IMWL, IWPCA, and other state wage laws.

29. Plaintiff will add additional Rule 23 claims under state wage and hour laws as necessary once additional persons opt into this case.

## **PARTIES**

30. Plaintiff Christian Fischer currently resides in Arizona. AFB employed Plaintiff Fischer as an MLO from approximately June 2019 to February 2024. Plaintiff Fischer's Consent to become a Party Plaintiff pursuant to 29 U.S.C. § 216(b) is attached as an exhibit.

31. Plaintiff Renard Batu currently resides in Michigan. AFB employed Plaintiff Batu as a NPM from approximately April 2022 to April 2024. Plaintiff Batu's Consent to become a Party Plaintiff pursuant to 29 U.S.C. § 216(b) is attached as an exhibit.

32. Plaintiff Anthony Seguna currently resides in Michigan. AFB employed Plaintiff Seguna as a PM from approximately February 2018 through October 2022. Plaintiff Seguna's Consent to become a Party Plaintiff pursuant to 29 U.S.C. § 216(b) is attached as an exhibit.

33. Plaintiff Leslie Pier currently reside in California. AFB employed Plaintiff Pier as a Loan Processor and/or an MLO from approximately April 2014 through April 2024. Plaintiff Pier's Consent to become a Party Plaintiff pursuant to 29 U.S.C. § 216(b) is attached as an exhibit.

34.    Defendant Allied First Bank, S.B. is a state chartered savings bank with its principal office located at 3201 Orchard Road, Oswego, IL 60543.  AFB does business in this judicial district and nationwide through the internet and other media.  AFB is a wholly owned subsidiary/affiliate of Allied First Bancorp, Inc.

35.    Defendant Allied First Bancorp, Inc. is a Maryland corporation with its principal place of business located in Oswego, IL.  Allied First Bancorp, Inc. does business in this judicial district and nationwide through the internet and other media.

36.    Defendant Servbank, SB is a state chartered savings bank with its principal office located at 3201 Orchard Road, Oswego, IL 60543.  Servbank, SB does business in this judicial district and nationwide through the internet and other media.

37.    Defendant Servbank Holdco, Inc. is an Arizona corporation with its principal office located at 3201 Orchard Road, Oswego, IL 60543.  Servbank Holdco, Inc. does business in this judicial district and nationwide through the internet and other media.

38.    On or about September 15, 2022, Servbank Holdco, Inc. completed its acquisition of Allied First Bank, S.B., and Allied First Bancorp, Inc.

**JURISDICTION AND VENUE**

39.    This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201, *et seq.*

40.    This Court has supplemental jurisdiction for all claims asserted under the IMWL and IWPCA in that the claims are part of the same case and controversy as the FLSA claims, the state and federal claims derive from a common nucleus of operative fact, the state claims will not substantially dominate over the FLSA claims, and exercising supplemental

jurisdiction would be in the interests of judicial economy, convenience, fairness, and comity.

41.     The United States District Court for the Northern District of Illinois has personal jurisdiction because AFB conducts business within this District.

42.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendants have offices, conduct business, and can be found in the Northern District of Illinois, and the causes of action set forth herein have arisen and occurred in part in the Northern District of Illinois.  Venue is also proper under 29 U.S.C. §1132(e)(2) because Defendants have substantial business contacts within the state of Illinois.

## FACTUAL ALLEGATIONS

43.     "We're a one-stop shop for all your banking needs. Whether you're opening a personal account, starting a business account, financing a major purchase, or anything else, Servbank has you covered." *See* AFB website:  https://servbank.com/.

44.     "Founded in 1994, Servbank is a banking institution with local roots and national reach." *See* AFB website:  https://servbank.com/about-us/.  "Mortgage Lending Solutions The complete bundle of services: UNDER-ONE-ROOF!"  https://servbank.com/home-loans/.

45.     At all relevant times, Defendants have been, and continue to be, "employers" engaged in the interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.  At all relevant times, Defendants have employed, and/or continue to employ, "employee[s]," including Plaintiffs and all similarly situated employees.  At all relevant times, Defendants have had gross operating revenues in excess of $500,000.00 which is the threshold test for the "enterprise" requirement under the FLSA.

46. At all relevant times, Defendants have been, and continue to be, "employers" as defined by the IMWL, 820 ILCS 105/3 and other applicable Illinois laws.

<u>MLOs</u>

47. Defendants paid Plaintiff Fischer and other MLOs on a commission only basis. As a result, Defendants failed to pay minimum wage and/or overtime compensation paid to Plaintiff and other MLOs.

48. By way of example, Plaintiff Fischer began working for Defendants in June 2019. Defendants did not pay her overtime compensation despite the fact that she routinely worked over eight hours per day and more than 40 hours per week.

49. Defendants uniformly applied its payment structure to all MLOs.

50. In fact, Defendants entered into form Mortgage Loan Originator Agreements with its MLOs which standardized their job duties, and employment terms and conditions.

51. Defendants suffered and permitted Plaintiff Fischer and other MLOs to work more than forty hours per week without minimum wage and/or overtime compensation for all hours worked. For example, Plaintiff Fischer and other MLOs regularly worked at least five days a week. They usually begin work in the early morning. In addition, Plaintiff Fischer and other MLOs regularly worked into the evenings and on the weekends, causing their hours worked to exceed forty in a week on a regular basis.

52. For example, Plaintiff Fischer often worked from 7:30 am until at least 6:30 pm during the week, plus additional time in the evenings. Plaintiff Fischer also worked on the weekends.

53. As another example, the week of March 14-20, 2021, Plaintiff Fischer worked about 60 hours which included 20 hours of overtime. Defendants, however, did not pay her any compensation for that week.

54.     Defendants failed to require Plaintiff Fischer and other MLOs to record their hours of work even though they worked more than 40 hours which was known to Defendants.

55.     Defendants knew Plaintiff Fischer and other MLOs worked more than forty hours in a week because Defendants expected Plaintiff Fischer and MLOs to be available to receive phone calls and answer emails – from customers, outside sources, and from Defendants' management employees – in the evenings and on weekends. Also, for example, Plaintiff Fischer and other MLOs were expected to timely respond to leads after receiving them. Plaintiff Fischer and other MLOs sometimes received these leads in the evenings and on the weekends.

56.     Further, Defendants required Plaintiff Fischer and other MLOs to register their cell phones with Defendants which emailed and texted them during the evenings and weekends in addition to "normal" work hours during the week.

57.     Defendants uniformly denied Plaintiff Fischer and other MLOs minimum wage and/or overtime pay.

58.     Defendants treated Plaintiff Fischer and other MLOs as commission only employees and therefore did not pay them all minimum wage and/or overtime compensation to which they are entitled, even though they worked overtime hours.  Defendants uniformly applied this policy and practice to all MLOs.

59.     In reality, Plaintiff Fischer and other MLOs are and were non-exempt sales employees who are and were entitled to minimum wage and/or overtime pay.

60.     Defendants are in the business of selling mortgages.

61.     Plaintiff Fischer and the other MLOs had the same primary duty of selling loan products.

62.     Plaintiff's Fischer and other MLOs' work is and was directly related to mortgage sales.

63. Plaintiff Fischer and other MLOs did not customarily and regularly make sales at their customers' home or place of business.

64. Instead, Plaintiff Fischer and other MLOs regularly made sales over the phone and/or via the internet.

65. Plaintiff Fischer and other MLOs did not regularly supervise the work of two or more employees.

66. Plaintiff Fischer and other MLOs did not exercise discretion and independent judgment as to matters of significance or perform office work related to AFB's general business operations or its customers.

67. Plaintiff Fischer and other MLOs had no advanced knowledge in a field of science or learning which required specialized instruction that was required to perform the job.

68. All MLOs are similarly situated in that they share common job duties and descriptions and were all subject to AFB's policy and practice that treated them as commission only employees, all had the standard Mortgage Loan Originator Agreement, and all performed work without minimum wage and/or overtime compensation.

69. Defendants' wage statements did not accurately reflect all hours Plaintiff Fischer and other MLOs worked because Defendants did not require Plaintiff Fischer and other MLOs to record their work time for all the hours they worked, including overtime hours.

70. Defendants did not provide Plaintiff Fischer and the other MLOs with accurate paychecks.

71. Defendants did not pay Plaintiff Fischer and other MLOs minimum wage or for their overtime hours. Accordingly, Defendants did not provide Plaintiff Fischer and other MLOs with all compensation owed to them, including their unpaid overtime, at the time they separated from the company.

72.     On February 14, 2023, Plaintiff Bart Gabe filed his Collective and Class Action Complaint in this Court, 1:23-cv-914,which alleged that AFB failed to pay MLOs all minimum wages, and or overtime due, and violated the FLSA and the IMWL. (Doc. 1).

73.     On February 13, 2024, Plaintiff Gabe moved for Court approval of the Parties' FLSA settlement which the Court granted that same day. (Docs. 55-58)

74.     AFB identified that the Gabe settlement covered 699 specifically named MLOs. In administering the settlement, numerous MLOs including Plaintiff Fischer contacted Plaintiffs' counsel to determine why the settlement did not include them because they worked as MLOs during the settlement time period. Plaintiff Fischer now asserts wage and hour claims for these MLOs and any other mortgage loan originators in like jobs who did not receive settlement monies pursuant to the Gabe settlement.

75.     Defendants are aware of wage and hour laws, as evidenced by the fact that they provide minimum wage and overtime compensation to other employees who are not MLOs. Moreover, it is common industry knowledge that courts, and the United States Department of Labor have found mortgage loan officers to be non-exempt employees entitled to be paid minimum wage and/or overtime compensation for all hours worked.

76.     Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damage to Plaintiff and other MLOs.

NPMs

77.     Defendants paid Plaintiff Batu and other NPMs a sporadic "salary" which failed to meet the minimum salary basis required by the FLSA and Illinois law. As a result, Plaintiff Batu and other NPMs were hourly, non-exempt employees, and Defendants failed to pay minimum wage and/or overtime compensation paid to Plaintiff Batu and other NPMs.

78.     By way of example, Plaintiff Batu began working for Defendants in approximately April 2022.   Defendants did not pay him any salary for his first several months of employment.

79.     Defendants then paid Plaintiff Batu a monthly salary of $750 sporadically during some months, but failed to pay him any salary during other months until he left Defendants in approximately April 2024.

80.     Despite Defendants not paying him any salary for some months and a salary which did not meet the minimum salary basis in other months, Defendants did not pay him overtime compensation despite the fact that he routinely worked over eight hours per day and more than 40 hours per week.

81.     Defendants uniformly applied its payment structure to all NPMs.

82.     In fact, Defendants entered into form NPM Agreements with its NPMs which standardized their job duties, and employment terms and conditions.

83.     Defendants suffered and permitted Plaintiff Batu and other NPMs to work more than forty hours per week without minimum wage and/or overtime compensation for all hours worked. For example, Plaintiff Batu and other NPMs regularly worked at least five days a week. They usually begin work in the early morning. In addition, Plaintiff Batu and other NPMs regularly worked into the evenings and on the weekends, causing their hours worked to exceed forty in a week on a regular basis.

84.     For example, Plaintiff Batu often worked from 7:00 am until at least 9:00 pm during the week, plus additional time in the evenings. Plaintiff Batu also worked on the weekends.

85.     As another example, the week of  Aug. 19 – 25, 2023, Plaintiff Batu worked about 100 hours which included 50 hours of overtime.  Defendants, however, did not pay him any overtime compensation for that week.

14

86.     Defendants failed to require Plaintiff Batu and other NPMs to record their hours of work even though they worked more than 40 hours which was known to Defendants.

87.     Defendants knew Plaintiff Batu and other NPMs worked more than forty hours in a week because Defendants expected Plaintiff Batu and NPMs to be available to receive phone calls and answer emails – from MLOs, customers, outside sources, and from Defendants' management employees – in the evenings and on weekends.

88.     Further, Defendants required Plaintiff Batu and other NPMs to register their cell phones with Defendants which emailed and texted them during the evenings and weekends in addition to "normal" work hours during the week.

89.     Defendants uniformly denied Plaintiff Batu and other NPMs minimum wage and/or overtime pay.

90.     Defendants treated Plaintiff Batu and other NPMs as exempt employees and therefore did not pay them all minimum wage and/or overtime compensation to which they are entitled, even though they worked overtime hours.  Defendants uniformly applied this policy and practice to all NPMs.

91.     In reality, Plaintiff Batu and other NPMs are and were non-exempt hourly employees who Defendants misclassified as exempt employees, and they are and were entitled to minimum wage and/or overtime pay.

<u>PMs</u>

92.     Defendants paid Plaintiff Seguna and other PMs a sporadic "salary" which failed to meet the minimum salary basis required by the FLSA and Illinois law. As a result, Plaintiff Seguna and other PMs were hourly, non-exempt employees, and Defendants failed to pay minimum wage and/or overtime compensation paid to Plaintiff Seguna and other PMs.

93.     By way of example, Plaintiff Seguna began working for Defendants in approximately February 2018. At best, Defendants paid him a "salary" of $2,000 monthly until he left Defendants in approximately April 2022.

94.     Despite Defendants not paying him a salary which did not meet the minimum salary basis in other months, Defendants did not pay him overtime compensation despite the fact that he routinely worked over eight hours per day and more than 40 hours per week.

95.     Defendants uniformly applied its payment structure to all PMs.

96.     In fact, Defendants entered into form PM Agreements with its PMs which standardized their job duties, and employment terms and conditions.

97.     Defendants suffered and permitted Plaintiff Seguna and other PMs to work more than forty hours per week without minimum wage and/or overtime compensation for all hours worked. For example, Plaintiff Seguna and other PMs regularly worked at least five days a week. They usually begin work in the early morning. In addition, Plaintiff Seguna and other PMs regularly worked into the evenings and on the weekends, causing their hours worked to exceed forty in a week on a regular basis.

98.     For example, Plaintiff Seguna often worked from 9:00 am until at least 6:00 pm during the week, plus additional time in the evenings. Plaintiff Seguna also worked on the weekends.

99.     As another example, the week of August 1 - 8, 2023, Plaintiff Seguna worked about 50 hours which included 10 hours of overtime. Defendants, however, did not pay him any overtime compensation for that week.

100.    Defendants failed to require Plaintiff Seguna and other PMs to record their hours of work even though they worked more than 40 hours which was known to Defendants.

101. Defendants knew Plaintiff Seguna and other PMs worked more than forty hours in a week because Defendants expected Plaintiff Batu and PMs to be available to receive phone calls and answer emails – from MLOs, customers, outside sources, and from Defendants' management employees – in the evenings and on weekends.

102. Further, Defendants required Plaintiff Seguna and other PMs to register their cell phones with Defendants which emailed and texted them during the evenings and weekends in addition to "normal" work hours during the week.

103. Defendants uniformly denied Plaintiff Seguna and other PMs minimum wage and/or overtime pay.

104. Defendants treated Plaintiff Seguna and other PMs as exempt employees and therefore did not pay them all minimum wage and/or overtime compensation to which they are entitled, even though they worked overtime hours. Defendants uniformly applied this policy and practice to all PMs.

105. In reality, Plaintiff Seguna and other PMs are and were non-exempt hourly employees who Defendants misclassified as exempt employees, and they are and were entitled to minimum wage and/or overtime pay.

<u>Loan Processors</u>

106. Defendants paid Plaintiff Pier and other Loan Processors a set amount per pay period and then a file bonus based upon the loan file completed. Plaintiff Pier and other Loan Processors though were hourly, non-exempt employees, and Defendants failed to pay minimum wage and/or overtime compensation to Plaintiff Pier and other Loan Processors.

107. By way of example, Plaintiff Pier began working for Defendants in approximately February 2018. Defendants paid her a "salary" of $1,450 "per pay period" plus file bonus(es).

108. Despite Defendants failing paying her a set amount which did not meet the minimum salary basis or otherwise classifying her as exempt, Defendants did not pay her overtime compensation despite the fact that she routinely worked over eight hours per day and more than 40 hours per week.

109. Defendants uniformly applied its payment structure to all Loan Processors.

110. In fact, Defendants entered into form Loan Processor Agreements and Processor Compensation Schedules with its Loan Processors which standardized their job duties, and employment terms and conditions.

111. Defendants suffered and permitted Plaintiff Pier and other Loan Processors to work more than forty hours per week without minimum wage and/or overtime compensation for all hours worked. For example, Plaintiff Pier and other Loan Processors regularly worked at least five days a week. They usually begin work in the early morning. In addition, Plaintiff Pier and other PMs regularly worked into the evenings and on the weekends, causing their hours worked to exceed forty in a week on a regular basis.

112. For example, Plaintiff Pier often worked from 7:00 am or 8:00 am until at least 6:00 pm during the week, plus additional time in the evenings. Plaintiff Pier also worked on the weekends. She then often worked 50 to 55 hours per week without overtime payment.

113. As another example, the week of August 1 - 8, 2023, Plaintiff Pier worked about 50 hours which included 10 hours of overtime. Defendants, however, did not pay her any overtime compensation for that week.

114. Defendants failed to require Plaintiff Pier and other Loan Processors to record their hours of work even though they worked more than 40 hours which was known to Defendants.

115. Defendants knew Plaintiff Pier and other Loan Processors worked more than forty hours in a week because Defendants expected Plaintiff Pier and Loan Processors to be available to receive phone calls and answer emails – from MLOs, customers, outside sources, and from Defendants' management employees – in the evenings and on weekends.

116. Defendants uniformly denied Plaintiff Pier and other Loan Processors minimum wage and/or overtime pay.

117. Defendants treated Plaintiff Pier and other Loan Processors as exempt employees and therefore did not pay them all minimum wage and/or overtime compensation to which they are entitled, even though they worked overtime hours. Defendants uniformly applied this policy and practice to all Loan Processors.

118. In reality, Plaintiff Pier and other Loan Processors are and were non-exempt hourly employees who Defendants misclassified as exempt employees, and they are and were entitled to minimum wage and/or overtime pay.

<u>MLO FLSA Collective</u>

119. Plaintiff Fischer brings Counts I and II on behalf of herself and other similarly situated employees as authorized under the FLSA, 29 U.S.C. § 216(b). The similarly situated employees are:

All persons who are, have been, or will be employed by Defendants as "mortgage loan originators," "loan officers," "loan originators," and individuals with similar job titles or duties within the United States at any time during the last three years plus applicable tolling through the entry of judgment in this case ("MLO FLSA Collective"). The MLO FLSA Collective excludes all MLOs who received settlement monies in *Gabe v. Allied First Bank, S.B. et al*, 1:23-cv-914 (N.D. Ill.)

120. Upon information and belief, Defendants paid Plaintiff Fischer and the MLO FLSA Collective on a commission only basis. Defendants suffered and permitted them to work more than forty hours per week without minimum wage and/or overtime compensation.

121. Defendants' failure to pay for minimum wages for work under forty hours per week and overtime for work hours over 40 per week is a uniform policy, decision, and/or plan that applies to all MLOs.

122. Accordingly, Plaintiff Fischer and the MLO FLSA Collective were subject to Defendants' policy, decision, and/or plan of failing to pay appropriate minimum wage and overtime compensation.

123. Defendants' unlawful FLSA conduct has been widespread, repeated, and consistent.

124. Upon information and belief, Defendants knew that Plaintiff Fischer and the MLO FLSA Collective performed work that required minimum wage and overtime pay. Defendants required them to work long hours and weekends without the proper pay, and it is common industry knowledge that loan officers are non-exempt employees who must be paid for all hours worked. Defendants operated under a scheme to deprive these employees of minimum wage and overtime compensation by failing to properly compensate them for all hours worked.

125. Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiff Fischer and the MLO FLSA Collective.

126. Defendants are liable under the FLSA for failing to properly compensate Plaintiff Fischer and the MLO FLSA Collective, and as such, notice should be sent to the MLO FLSA Collective. There are numerous similarly situated, current and former employees of Defendants who have been denied minimum wages and overtime pay in violation of the

FLSA who would benefit from the issuance of a Court supervised notice of the present lawsuit and the opportunity to join. Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

### Rule 23 MLO Illinois IMWL Class

127. Plaintiff Fischer (the "Illinois MLO Class Representative") also brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following defined class:

**Illinois Class:** All Persons who are, have been, or will be employed by Defendants as "mortgage loan originators," "loan officers," "loan originators," or similar job titles or duties, within the State of Illinois and/or with Mortgage Loan Originator Agreements which apply Illinois law, and who worked anytime within the last three years plus applicable tolling ("Rule 23 MLO Illinois IMWL Class"). The Rule 23 MLO Illinois IMWL Class excludes all MLOs who received settlement monies in *Gabe v. Allied First Bank, S.B. et al*, 1:23-cv-914 (N.D. Ill.)

128. **Numerosity**: Upon information and belief, the Proposed Rule 23 MLO Illinois IMWL Class is so numerous that joinder of all members is impracticable. Plaintiff is informed and believes, and on that basis alleges, that during the relevant time period, Defendants employed more than fifty (50) people who satisfy the definition of the Proposed Rule 23 MLO Illinois IMWL Class.

129. **Typicality**: The MLO Illinois Class Representatives' claims are typical of the members of the Rule 23 MLO Illinois IMWL Class. For example:

a. The MLO Illinois Class Representative is informed and believes that, like other MLOs, she routinely worked more than forty hours per week during the Illinois Class Period.

b. The MLO Illinois Class Representative had the same duties and responsibilities as other Rule 23 MLO Illinois IMWL Class members, and the same standard form Mortgage Loan

Originator Agreement. MLO Class Representative's and Rule 23 MLO Illinois IMWL Class's primary duty was to sell mortgage products.

c. The MLO Illinois Class Representative and the Rule 23 MLO Illinois IMWL Class were subject to Defendants' policy and practice of improperly failing to pay appropriate overtime compensation and minimum wages, failing to maintain accurate records of hours worked, and failing to issue accurate paychecks.

130. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate defendants.

131. **Adequacy**: The MLO Illinois Class Representative will fairly and adequately protect the interests of the Rule 23 MLO Illinois IMWL Class and has retained counsel experienced in complex wage and hour class and collective action litigation.

132. **Commonality**: Common questions of law and fact exist to all members of the Rule 23 MLO Illinois IMWL Class and predominate over any questions solely affecting individual members of the Class, including but not limited to:

a. Whether Defendants employed Plaintiff Fischer and the Rule 23 MLO Illinois IMWL Class Members within the meaning of the IMWL;

b. Whether Defendants failed to maintain true and accurate time records and/or wage statements for Plaintiff Fischer and the Rule 23 MLO Illinois IMWL Class;

c. Whether Defendants failed to pay minimum wage and/or overtime rates to Plaintiff Fischer and the Rule 23 MLO Illinois IMWL Class for all hours worked including overtime hours;

d. The nature and extent of Class wide injury and the appropriate measure of damages for Plaintiff Fischer and the Rule 23 MLO Illinois IMWL Class; and

e. Whether Defendants misclassified Plaintiff Fischer and the Rule 23 MLO Illinois IMWL Class as exempt from the overtime provisions of the IMWL.

133. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Rule 23 MLO Illinois IMWL Class predominate over any questions only affecting individual members of the Rule 23 MLO Illinois IMWL Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' common and uniform policies and practices denied the members of the Rule 23 MLO Illinois IMWL Class the minimum wages and/or overtime pay to which they are entitled. The damages suffered by the individual Rule 23 MLO Illinois IMWL Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

134. Plaintiff intends to send notice to all members of the Rule 23 MLO Illinois IMWL Class to the extent required by Rule 23. Defendant has the contact information for the members of the Rule 23 MLO Illinois IMWL Class.

<u>NPM FLSA Collective</u>

135. Plaintiff Batu brings claims on behalf of himself and other similarly situated employees as authorized under the FLSA, 29 U.S.C. § 216(b). The similarly situated employees are:

All persons who are, have been, or will be employed by Defendants as "nonproducing team mangers," and individuals with similar job titles or duties within the United States at any time during the last three years plus applicable tolling through the entry of judgment in this case ("NPM FLSA Collective").

136. Upon information and belief, Defendants paid Plaintiff Batu and the NPM FLSA Collective a "salary" sporadically is some months and/or no compensation in other months.

Defendants suffered and permitted them to work more than forty hours per week without minimum wage and/or overtime compensation.

137. Defendants' failure to pay for minimum wages for work under forty hours per week and overtime for work hours over 40 per week is a uniform policy, decision, and/or plan that applies to all NPMs.

138. Accordingly, Plaintiff Batu and the NPM FLSA Collective were subject to Defendants' policy, decision, and/or plan of failing to pay appropriate minimum wage and overtime compensation.

139. Defendants' unlawful FLSA conduct has been widespread, repeated, and consistent.

140. Upon information and belief, Defendants knew that Plaintiff Batu and the NPM FLSA Collective performed work that required minimum wage and overtime pay. Defendants required them to work long hours and weekends without the proper pay, and it is common industry knowledge that employees who are not paid the legally required minimum weekly salary amount are non-exempt employees who must be paid for all hours worked. Defendants operated under a scheme to deprive these employees of minimum wage and overtime compensation by failing to properly compensate them for all hours worked.

141. Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damage to Plaintiff Batu and the NPM FLSA Collective.

142. Defendants are liable under the FLSA for failing to properly compensate Plaintiff Batu and the NPM FLSA Collective, and as such, notice should be sent to the NPM FLSA Collective. There are numerous similarly situated, current and former employees of Defendants who have been denied minimum wages and overtime pay in violation of the FLSA who would benefit from the issuance of a Court supervised notice of the present

lawsuit and the opportunity to join. Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

<u>Rule 23 NPM Illinois IMWL Class</u>

143. Plaintiff Batu (the "Illinois NPM Class Representative") also brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following defined class:

> **Illinois Class:** All Persons who are, have been, or will be employed by Defendants as "nonproducing team managers," or similar job titles or duties, within the State of Illinois and/or with Agreements which apply Illinois law, and who worked anytime within the last three years plus applicable tolling ("Rule 23 NPM Illinois IMWL Class").

144. **Numerosity**: Upon information and belief, the Proposed Rule 23 NPM Illinois IMWL Class is so numerous that joinder of all members is impracticable. Plaintiff is informed and believes, and on that basis alleges, that during the relevant time period, Defendants employed more than fifty (50) people who satisfy the definition of the Proposed Rule 23 NPM Illinois IMWL Class.

145. **Typicality**: The NPM Illinois Class Representatives' claims are typical of the members of the Rule 23 NPM Illinois IMWL Class. For example:

a. The NPM Illinois Class Representative is informed and believes that, like other NPMs, he routinely worked more than forty hours per week during the Illinois Class Period.

b. The NPM Illinois Class Representative had the same duties and responsibilities as other Rule 23 NPM Illinois IMWL Class members, and the same standard form Agreement. NPM Class Representative and Rule 23 NPM Illinois IMWL Class had the same primary duty.

c. The NPM Illinois Class Representative and the Rule 23 NPM Illinois IMWL Class were subject to Defendants' policy and practice of improperly failing to pay appropriate

overtime compensation and minimum wages, failing to maintain accurate records of hours worked, and failing to issue accurate paychecks.

146. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate defendants.

147. **Adequacy**: The NPM Illinois Class Representative will fairly and adequately protect the interests of the Rule 23 NPM Illinois IMWL Class, and has retained counsel experienced in complex wage and hour class and collective action litigation.

148. **Commonality**: Common questions of law and fact exist to all members of the Rule 23 NPM Illinois IMWL Class and predominate over any questions solely affecting individual members of the Class, including but not limited to:

a. Whether Defendants employed Plaintiff Batu and the Rule 23 NPM Illinois IMWL Class Members within the meaning of the IMWL;

b. Whether Defendants failed to maintain true and accurate time records and/or wage statements for Plaintiff Batu and the Rule 23NPM Illinois IMWL Class;

c. Whether Defendants failed to pay minimum wage and/or overtime rates to Plaintiff Batu and the Rule 23 NPM Illinois IMWL Class for all hours worked including overtime hours;

d. The nature and extent of Class wide injury and the appropriate measure of damages for Plaintiff Batu and the Rule 23 NPM Illinois IMWL Class; and

e. Whether Defendants misclassified Plaintiff Batu and the Rule 23 NPM Illinois IMWL Class as exempt from the overtime provisions of the IMWL.

149. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Rule 23 NPM Illinois IMWL Class predominate over any questions only affecting individual members of the Rule 23 NPM Illinois IMWL Class, and because a class action is superior to other available methods for the fair and efficient

26

adjudication of this litigation. Defendants' common and uniform policies and practices denied the members of the Rule 23 NPM Illinois IMWL Class the minimum wages and/or overtime pay to which they are entitled. The damages suffered by the individual Rule 23 NPM Illinois IMWL Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

150.     Plaintiff intends to send notice to all members of the Rule 23 NPM Illinois IMWL Class to the extent required by Rule 23. Defendant has the contact information for the members of the Rule 23 NPM Illinois IMWL Class.

<u>PM FLSA Collective</u>

151.     Plaintiff Seguna brings claims on behalf of himself and other similarly situated employees as authorized under the FLSA, 29 U.S.C. § 216(b). The similarly situated employees are:

All persons who are, have been, or will be employed by Defendants as "producing team mangers," and individuals with similar job titles or duties within the United States at any time during the last three years plus applicable tolling through the entry of judgment in this case ("PM FLSA Collective").

152.     Upon information and belief, Defendants paid Plaintiff Seguna and the PM FLSA Collective a "salary" and/or none at all which failed to meet the legally mandated minimum salary for exempt employees. Defendants thus suffered and permitted them to work more than forty hours per week without minimum wage and/or overtime compensation.

153.     Defendants' failure to pay for minimum wages for work under forty hours per week and overtime for work hours over 40 per week is a uniform policy, decision, and/or plan that applies to all PMs.

154. Accordingly, Plaintiff Seguna and the PM FLSA Collective were subject to Defendants' policy, decision, and/or plan of failing to pay appropriate minimum wage and overtime compensation.

155. Defendants' unlawful FLSA conduct has been widespread, repeated, and consistent.

156. Upon information and belief, Defendants knew that Plaintiff Seguna and the PM FLSA Collective performed work that required minimum wage and overtime pay. Defendants required them to work long hours and weekends without the proper pay, and it is common industry knowledge that employees who commission only and/or are not paid the legally required minimum weekly salary amount are non-exempt employees who must be paid for all hours worked. Defendants operated under a scheme to deprive these employees of minimum wage and overtime compensation by failing to properly compensate them for all hours worked.

157. Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiff Seguna and the PM FLSA Collective.

158. Defendants are liable under the FLSA for failing to properly compensate Plaintiff Seguna and the PM FLSA Collective, and as such, notice should be sent to the PM FLSA Collective. There are numerous similarly situated, current and former employees of Defendants who have been denied minimum wages and overtime pay in violation of the FLSA who would benefit from the issuance of a Court supervised notice of the present lawsuit and the opportunity to join. Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

<u>Rule 23 PM Illinois IMWL Class</u>

159.    Plaintiff Seguna (the "Illinois NPM Class Representative") also brings this action as a class

action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the

following defined class:

> **Illinois Class:** All Persons who are, have been, or will be employed by Defendants as
> "producing team managers," or similar job titles or duties, within the State of Illinois
> and/or with Agreements which apply Illinois law, and who worked anytime within the
> last three years plus applicable tolling ("Rule 23 PM Illinois IMWL Class").

160.    **<u>Numerosity</u>**: Upon information and belief, the Proposed Rule 23 PM Illinois IMWL Class

is so numerous that joinder of all members is impracticable. Plaintiff Seguna is informed

and believes, and on that basis alleges, that during the relevant time period, Defendants

employed more than fifty (50) people who satisfy the definition of the Proposed Rule 23

PM Illinois IMWL Class.

161.    **<u>Typicality</u>**: The PM Illinois Class Representatives' claims are typical of the members of

the Rule 23 PM Illinois IMWL Class. For example:

a. The PM Illinois Class Representative is informed and believes that, like other PMs, he

routinely worked more than forty hours per week during the Illinois Class Period.

b. The PM Illinois Class Representative had the same duties and responsibilities as other

Rule 23 PM Illinois IMWL Class members, and the same standard form Agreement. PM

Class Representative and Rule 23 PM Illinois IMWL Class had the same primary duty

which was to sell mortgage products.

c. The PM Illinois Class Representative and the Rule 23 PM Illinois IMWL Class were

subject to Defendants' policy and practice of improperly failing to pay appropriate

overtime compensation and minimum wages, failing to maintain accurate records of hours

worked, and failing to issue accurate paychecks.

162. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate defendants.

163. **Adequacy**: The PM Illinois Class Representative will fairly and adequately protect the interests of the Rule 23 PM Illinois IMWL Class, and has retained counsel experienced in complex wage and hour class and collective action litigation.

164. **Commonality**: Common questions of law and fact exist to all members of the Rule 23 PM Illinois IMWL Class and predominate over any questions solely affecting individual members of the Class, including but not limited to:

a. Whether Defendants employed Plaintiff Seguna and the Rule 23 PM Illinois IMWL Class Members within the meaning of the IMWL;

b. Whether Defendants failed to maintain true and accurate time records and/or wage statements for Plaintiff Seguna and the Rule 23 PM Illinois IMWL Class;

c. Whether Defendants failed to pay minimum wage and/or overtime rates to Plaintiff Seguna and the Rule 23 PM Illinois IMWL Class for all hours worked including overtime hours;

d. The nature and extent of Class wide injury and the appropriate measure of damages for Plaintiff Seguna and the Rule 23 PM Illinois IMWL Class; and

e. Whether Defendants misclassified Plaintiff Seguna and the Rule 23 PM Illinois IMWL Class as exempt from the overtime provisions of the IMWL.

165. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Rule 23 PM Illinois IMWL Class predominate over any questions only affecting individual members of the Rule 23 PM Illinois IMWL Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' common and uniform policies and practices denied the members of the Rule 23 PM Illinois IMWL Class the minimum wages and/or

overtime pay to which they are entitled. The damages suffered by the individual Rule 23 PM Illinois IMWL Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

166.    Plaintiff intends to send notice to all members of the Rule 23 PM Illinois IMWL Class to the extent required by Rule 23. Defendant has the contact information for the members of the Rule 23 PM Illinois IMWL Class.

<u>Loan Processor FLSA Collective</u>

167.    Plaintiff Pier brings claims on behalf of herself and other similarly situated employees as authorized under the FLSA, 29 U.S.C. § 216(b). The similarly situated employees are:

    All persons who are, have been, or will be employed by Defendants as "loan processors,"
    and individuals with similar job titles or duties within the United States at any time
    during the last three years plus applicable tolling through the entry of judgment in this
    case ("Loan Processor FLSA Collective").

168.    Upon information and belief, Defendants paid Plaintiff Pier and the Loan Processor FLSA Collective a set amount and/or "salary" which failed to meet the legally mandated minimum salary for exempt employees. These employees also did not perform exempt duties. Defendants thus suffered and permitted them to work more than forty hours per week without minimum wage and/or overtime compensation.

169.    Defendants' failure to pay for minimum wages for work under forty hours per week and overtime for work hours over 40 per week is a uniform policy, decision, and/or plan that applies to all Loan Processors.

170. Accordingly, Plaintiff Pier and the Loan Processor FLSA Collective were subject to Defendants' policy, decision, and/or plan of failing to pay appropriate minimum wage and overtime compensation.

171. Defendants' unlawful FLSA conduct has been widespread, repeated, and consistent.

172. Upon information and belief, Defendants knew that Plaintiff Pier and the Loan Processor FLSA Collective performed work that required minimum wage and overtime pay. Defendants required them to work long hours and weekends without the proper pay, and it is common industry knowledge that loan processing employees are non-exempt employees who must be paid for all hours worked. Defendants operated under a scheme to deprive these employees of minimum wage and overtime compensation by failing to properly compensate them for all hours worked.

173. Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiff Pier and the Loan Processor FLSA Collective.

174. Defendants are liable under the FLSA for failing to properly compensate Plaintiff Pier and the Loan Processor FLSA Collective, and as such, notice should be sent to the Loan Processor FLSA Collective. There are numerous similarly situated, current and former employees of Defendants who have been denied minimum wages and overtime pay in violation of the FLSA who would benefit from the issuance of a Court supervised notice of the present lawsuit and the opportunity to join. Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

Rule 23 Loan Processor Illinois IMWL Class

175.    Plaintiff Pier (the "Illinois Loan Processor Class Representative") also brings this action as

a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the

following defined class:

**Illinois Class:** All Persons who are, have been, or will be employed by Defendants as
"producing team managers," or similar job titles or duties, within the State of Illinois
and/or with Agreements which apply Illinois law, and who worked anytime within the
last three years plus applicable tolling ("Rule 23 Loan Processor Illinois IMWL Class").

176.    **Numerosity**: Upon information and belief, the Proposed Rule 23 Loan Processor Illinois

IMWL Class is so numerous that joinder of all members is impracticable. Plaintiff Pier is

informed and believes, and on that basis alleges, that during the relevant time period,

Defendants employed more than fifty (50) people who satisfy the definition of the Proposed

Rule 23 Loan Processor Illinois IMWL Class.

177.    **Typicality**: The PM Illinois Class Representatives' claims are typical of the members of

the Rule 23 Loan Processor Illinois IMWL Class. For example:

a. The PM Illinois Class Representative is informed and believes that, like other Loan

Processors, she routinely worked more than forty hours per week during the Illinois Class

Period.

b. The Loan Processor Illinois Class Representative had the same duties and

responsibilities as other Rule 23 Loan Processor Illinois IMWL Class members, and the

same standard form Agreement. Loan Processor Class Representative and Rule 23 Loan

Processor Illinois IMWL Class had the same primary duty which was to gather and process

documents and other related information in connection with the sale of mortgage products.

c. The Loan Processor Illinois Class Representative and the Rule 23 Loan Processor Illinois

IMWL Class were subject to Defendants' policy and practice of improperly failing to pay

appropriate overtime compensation and minimum wages, failing to maintain accurate records of hours worked, and failing to issue accurate paychecks.

178.  **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate defendants.

179.  **Adequacy**: The Loan Processor Illinois Class Representative will fairly and adequately protect the interests of the Rule 23 Loan Processor Illinois IMWL Class and has retained counsel experienced in complex wage and hour class and collective action litigation.

180.  **Commonality**: Common questions of law and fact exist to all members of the Rule 23 Loan Processor Illinois IMWL Class and predominate over any questions solely affecting individual members of the Class, including but not limited to:

a. Whether Defendants employed Plaintiff Pier and the Rule 23 Loan Processor Illinois IMWL Class Members within the meaning of the IMWL;

b. Whether Defendants failed to maintain true and accurate time records and/or wage statements for Plaintiff Pier and the Rule 23 Loan Processor Illinois IMWL Class;

c. Whether Defendants failed to pay minimum wage and/or overtime rates to Plaintiff Pier and the Rule 23 Loan Processor Illinois IMWL Class for all hours worked including overtime hours;

d. The nature and extent of Class wide injury and the appropriate measure of damages for Plaintiff Pier and the Rule 23 Loan Processor Illinois IMWL Class; and

e. Whether Defendants misclassified Plaintiff Pier and the Rule 23 Loan Processor Illinois IMWL Class as exempt from the overtime provisions of the IMWL.

181.  Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Rule 23 Loan Processor Illinois IMWL Class predominate over any questions only affecting individual members of the Rule 23 Loan Processor Illinois IMWL Class, and because a class action is superior to other available methods for

the fair and efficient adjudication of this litigation. Defendants' common and uniform policies and practices denied the members of the Rule 23 Loan Processor Illinois IMWL Class the minimum wages and/or overtime pay to which they are entitled. The damages suffered by the individual Rule 23 Loan Processor Illinois IMWL Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

182.   Plaintiff intends to send notice to all members of the Rule 23 Loan Processor Illinois IMWL Class to the extent required by Rule 23. Defendant has the contact information for the members of the Rule 23 Loan Processor Illinois IMWL Class.

Rule 23 Unpaid Vacation IWPCA Class

183.   Plaintiff Pier (the "Unpaid Vacation Class Representative") also brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following defined class:

**Illinois Class:**  All Persons who are, have been, or will be employed by Defendants within the State of Illinois and/or with Agreements which apply Illinois law, and who left their employment with Defendants anytime within the last three years plus applicable tolling ("Rule 23 Unpaid Vacation IWPCA Class"). The Rule 23 Unpaid Vacation IWPCA Class excludes all MLOs who received settlement monies in *Gabe v. Allied First Bank, S.B. et al*, 1:23-cv-914 (N.D. Ill.)

184.   **Numerosity**: Upon information and belief, the Rule 23 Unpaid Vacation IWPCA Class is so numerous that joinder of all members is impracticable. Plaintiff Pier is informed and believes, and on that basis alleges, that during the relevant time period, Defendants employed more than fifty (50) people who satisfy the definition of the Proposed Rule 23 Unpaid Vacation IWPCA Class.

185. **Typicality**: The Unpaid Vacation IWPCA Class Representative's claims are typical of the members of the Rule 23 Unpaid Vacation IWPCA Class. For example:

a. The Unpaid Vacation IWPCA Class Representative is informed and believes that, like other employees, she received the AFB Mortgage Division Employee Handbook which set forth Defendants' vacation policy during the Illinois Class Period.

b. The Unpaid Vacation IWPCA Class Representative received the same vacation pay policy as other Rule 23 Unpaid Vacation IWPCA Class members which provided that "[u]pon termination, eligible employees will be paid for accrued but unused vacation."

c. The Unpaid Vacation IWPCA Class Representative and the Rule 23 Unpaid Vacation IWPCA Class were subject to Defendants' policy and practice of improperly failing to pay for accrued, unused vacation when employees left their employment.

186. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate defendants.

187. **Adequacy**: The Unpaid Vacation IWPCA Class Representative will fairly and adequately protect the interests of the Rule 23 Unpaid Vacation IWPCA Class, and has retained counsel experienced in complex wage and hour class and collective action litigation.

188. **Commonality**: Common questions of law and fact exist to all members of the Rule 23 Unpaid Vacation IWPCA Class and predominate over any questions solely affecting individual members of the Class, including but not limited to:

a. Whether Defendants employed Plaintiff Pier and the Rule 23 Unpaid Vacation IWPCA Class Members within the meaning of the IWPCA;

b. Whether Defendants failed to maintain true and accurate time records and/or wage statements for Plaintiff Pier and the Rule 23 Unpaid Vacation IWPCA Class;

c. Whether Defendants failed to pay accrued vacation time to Plaintiff Pier and the Rule 23 Unpaid Vacation IWPCA Class when they left their employment; and

d. The nature and extent of Class wide injury and the appropriate measure of damages for Plaintiff Pier and the Rule 23 Unpaid Vacation IWPCA Class.

189. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Rule 23 Unpaid Vacation IWPCA Class predominate over any questions only affecting individual members of the Rule 23 Unpaid Vacation IWPCA Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' common and uniform policies and practices denied the members of the Rule 23 Unpaid Vacation IWPCA Class the vacation payout to which they are entitled. The damages suffered by the individual Rule 23 Unpaid Vacation IWPCA Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

190. Plaintiff intends to send notice to all members of the Rule 23 Unpaid Vacation IWPCA Class to the extent required by Rule 23. Defendant has the contact information for the members of the Rule 23 Unpaid Vacation IWPCA Class.

## COUNT I
### Collective Action under §216(b) of the FAIR LABOR STANDARDS ACT
### MLO Overtime Claims

191. Plaintiff Fischer hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

192. The FLSA requires each covered employer such as Defendants to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per work week.

193. Plaintiff Fischer and the MLO FLSA Collective are entitled to be paid overtime compensation for all hours worked.

194. Defendants, pursuant to their policies and practices, failed and refused to pay overtime premiums to Plaintiff Fischer and the MLO FLSA Collective for all of their hours worked.

195. Defendants violated the FLSA, 29 U.S.C. § 201 *et seq*. by failing to compensate Plaintiff Fischer and the MLO FLSA Collective for all overtime compensation.

196. By failing to record, report, and/or preserve accurate records of hours worked by Plaintiff Fischer and the MLO FLSA Collective, Defendants failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practice of employment, in violation of the FLSA, 29 U.S.C. § 201 *et seq*.

197. The foregoing conduct, as alleged herein, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

198. Plaintiff Fischer, on behalf of herself and the MLO FLSA Collective, seek damages in the amount of all respective unpaid overtime compensations at a rate of one and one-half times the regular rate of pay for work performed in excess of forty hours in a work week, plus liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems just and proper.

199.  Plaintiff Fischer, on behalf of herself and the MLO FLSA Collective seek recovery of all attorneys' fees, costs, and expenses of this action, to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

**COUNT II**
**Collective Action under § 216(b) of the FAIR LABOR STANDARDS ACT**
**MLO Minimum Wage Claims**

200.  Plaintiff Fischer hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

201.  The FLSA requires employers, such as Defendants, to pay employees the minimum wage for all hours worked.

202.  During the applicable statute of limitations, Defendants have failed to pay Plaintiff Fischer and members of the MLO FLSA Collective the legally mandated minimum wage for all hours worked.

203.  The foregoing conduct, as alleged herein, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

204.  Plaintiff Fischer, on behalf of herself and the MLO FLSA Collective, seek damages in the amount of all respective unpaid minimum wage compensation at minimum wage rate effective during the applicable work week, plus liquidated damages, as provided by the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems just and proper.

205.  Plaintiff Fischer, on behalf of herself and the MLO FLSA Collective, seek recovery of all attorneys' fees, costs, and expenses of this action, to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

## COUNT III
### FED.R.CIV.P. 23 Class Action under
### ILLINOIS MINIMUM WAGE LAW, 820 ILCS 105/1 *ET SEQ.*
### MLO MINIMUM WAGES

206.    Plaintiff Fischer hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

207.    Defendants engaged in a widespread pattern, policy, and practice of violating the IMWL, as detailed above in this Collective and Class Action Complaint.

208.    Plaintiff Fischer and the Rule 23 MLO Illinois IMWL Class are not exempt from the minimum wage provisions of the IMWL.

209.    Defendants failed to pay Plaintiff Fischer and the Rule 23 MLO Illinois IMWL Class Members the minimum wages to which they are entitled in violation of the IMWL.

210.    Pursuant to 820 ILCS 105/12(a), Plaintiff Fischer and the Rule 23 MLO Illinois IMWL Class Members are entitled to recover statutory damages in the amount of five percent (5%) per month of the amount of the underpayments occurring on and after February 19, 2019.

211.    As a result of Defendants' violations of the IMWL, Plaintiff Fischer and the Rule 23 MLO Illinois IMWL Class Members have suffered damages by being denied minimum wages in accordance with the IMWL in amounts to be determined at trial, and are entitled to recovery of all such amounts, statutory damages, attorneys fees and costs, and such other and further relief the court deems appropriate and just.

## COUNT IV
### FED.R.CIV.P. 23 Class Action under
### Illinois Minimum Wage Law, 820 ILCS 105/1 ET SEQ.
### MLO Overtime Wages

212.    Plaintiff Fischer hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

213.    Defendants engaged in a widespread pattern, policy, and practice of violating the IMWL, as detailed above in this Collective and Class Action Complaint.

214.    Plaintiff Fischer and the Rule 23 MLO Illinois IMWL Class are not exempt from the overtime provisions of the IMWL.

215.    Defendants failed to pay Plaintiff Fischer and the Rule 23 MLO Illinois IMWL Class Members the overtime wages to which they are entitled in violation of the IMWL.

216.    Pursuant to 820 ILCS 105/12(a), Plaintiff Fischer and the Rule 23 MLO Illinois IMWL Class Members are entitled to recover statutory damages in the amount of five percent (5%) per month of the amount of the underpayments occurring on and after February 19, 2019.

217.    As a result of Defendants' violations of the IMWL, Plaintiff Fischer and the Rule 23 MLO Illinois IMWL Class Members have suffered damages by being denied overtime wages in accordance with the IMWL in amounts to be determined at trial, and are entitled to recovery of all such amounts, statutory damages, attorneys fees and costs, and such other and further relief the court deems appropriate and just.

<u>COUNT V</u>
**Collective Action under §216(b) of the FAIR LABOR STANDARDS ACT**
**NPM Overtime Claims**

218.    Plaintiff Batu hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

219.    The FLSA requires each covered employer such as Defendants to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per work week.

220.   The FLSA also requires Defendants to pay employees a minimum weekly "salary basis" of $684 per week to qualify for a "white collar exemption."  Defendants routinely failed to meet this requirement with its NPMs.

221.   Plaintiff Batu and the NPM FLSA Collective are entitled to be paid overtime compensation for all hours worked.

222.   Defendants, pursuant to their policies and practices, failed and refused to pay overtime premiums to Plaintiff Batu and the NPM FLSA Collective for all of their hours worked.

223.   Defendants violated the FLSA, 29 U.S.C. § 201 *et seq*. by failing to compensate Plaintiff Batu and the NPM FLSA Collective for all overtime compensation.

224.   By failing to record, report, and/or preserve accurate records of hours worked by Plaintiff Batu and the NPM FLSA Collective, Defendants failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practice of employment, in violation of the FLSA, 29 U.S.C. § 201 *et seq*.

225.   The foregoing conduct, as alleged herein, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

226.   Plaintiff Batu, on behalf of himself and the NPM FLSA Collective, seeks damages in the amount of all respective unpaid overtime compensations at a rate of one and one-half times the regular rate of pay for work performed in excess of forty hours in a work week, plus liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems just and proper.

227.   Plaintiff Batu, on behalf of himself and the NPM FLSA Collective seek recovery of all attorneys' fees, costs, and expenses of this action, to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

## COUNT VI
### Collective Action under § 216(b) of the FAIR LABOR STANDARDS ACT
### NPM Minimum Wage Claims

228. Plaintiff Batu hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

229. The FLSA requires employers, such as Defendants, to pay employees the minimum wage for all hours worked.

230. During the applicable statute of limitations, Defendants have failed to pay Plaintiff Batu and members of the NPM FLSA Collective the legally mandated minimum wage for all hours worked.

231. The foregoing conduct, as alleged herein, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

232. Plaintiff Batu, on behalf of himself and the NPM FLSA Collective, seek damages in the amount of all respective unpaid minimum wage compensation at minimum wage rate effective during the applicable work week, plus liquidated damages, as provided by the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems just and proper.

233. Plaintiff Batu, on behalf of himself and the NPM FLSA Collective, seek recovery of all attorneys' fees, costs, and expenses of this action, to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

## COUNT VII
### FED.R.CIV.P. 23 Class Action under
### ILLINOIS MINIMUM WAGE LAW, 820 ILCS 105/1 *ET SEQ.*
### NPM MINIMUM WAGES

234. Plaintiff Batu hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

235. Defendants engaged in a widespread pattern, policy, and practice of violating the IMWL, as detailed above in this Collective and Class Action Complaint.

236. Plaintiff Batu and the Rule 23 NPM Illinois IMWL Class are not exempt from the minimum wage provisions of the IMWL.

237. Defendants failed to pay Plaintiff Batu and the Rule 23 NPM Illinois IMWL Class Members the minimum wages to which they are entitled in violation of the IMWL.

238. Pursuant to 820 ILCS 105/12(a), Plaintiff Batu and the Rule 23 NPM Illinois IMWL Class Members are entitled to recover statutory damages in the amount of five percent (5%) per month of the amount of the underpayments occurring on and after February 19, 2019.

239. As a result of Defendants' violations of the IMWL, Plaintiff Batu and the Rule 23 NPM Illinois IMWL Class Members have suffered damages by being denied minimum wages in accordance with the IMWL in amounts to be determined at trial, and are entitled to recovery of all such amounts, statutory damages, attorneys fees and costs, and such other and further relief the court deems appropriate and just.

## COUNT VIII
### FED.R.CIV.P. 23 Class Action under
### Illinois Minimum Wage Law, 820 ILCS 105/1 ET SEQ.
### NPM Overtime Wages

240. Plaintiff Batu hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

241. Defendants engaged in a widespread pattern, policy, and practice of violating the IMWL, as detailed above in this Collective and Class Action Complaint.

242. Plaintiff Batu and the Rule 23 NPM Illinois IMWL Class are not exempt from the overtime provisions of the IMWL.

243. Defendants failed to pay Plaintiff Batu and the Rule 23 NPM Illinois IMWL Class Members the overtime wages to which they are entitled in violation of the IMWL.

244. Pursuant to 820 ILCS 105/12(a), Plaintiff Batu and the Rule 23 NPM Illinois IMWL Class Members are entitled to recover statutory damages in the amount of five percent (5%) per month of the amount of the underpayments occurring on and after February 19, 2019.

245. As a result of Defendants' violations of the IMWL, Plaintiff Batu and the Rule 23 NPM Illinois IMWL Class Members have suffered damages by being denied overtime wages in accordance with the IMWL in amounts to be determined at trial, and are entitled to recovery of all such amounts, statutory damages, attorneys fees and costs, and such other and further relief the court deems appropriate and just.

**COUNT IX**
**Collective Action under §216(b) of the FAIR LABOR STANDARDS ACT**
**PM Overtime Claims**

246. Plaintiff Seguna hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

247. The FLSA requires each covered employer such as Defendants to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per work week.

248. The FLSA also requires Defendants to pay employees a minimum weekly "salary basis" of $684 per week to qualify for a "white collar exemption." Defendants routinely failed to meet this requirement with its PMs.

249. Plaintiff Seguna and the PM FLSA Collective are entitled to be paid overtime compensation for all hours worked.

250.    Defendants, pursuant to their policies and practices, failed and refused to pay overtime premiums to Plaintiff Seguna and the PM FLSA Collective for all of their hours worked.

251.    Defendants violated the FLSA, 29 U.S.C. § 201 *et seq.* by failing to compensate Plaintiff Seguna and the PM FLSA Collective for all overtime compensation.

252.    By failing to record, report, and/or preserve accurate records of hours worked by Plaintiff Seguna and the PM FLSA Collective, Defendants failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practice of employment, in violation of the FLSA, 29 U.S.C. § 201 *et seq*.

253.    The foregoing conduct, as alleged herein, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

254.    Plaintiff Seguna, on behalf of himself and the PM FLSA Collective, seeks damages in the amount of all respective unpaid overtime compensations at a rate of one and one-half times the regular rate of pay for work performed in excess of forty hours in a work week, plus liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems just and proper.

255.    Plaintiff Seguna, on behalf of himself and the PM FLSA Collective seek recovery of all attorneys' fees, costs, and expenses of this action, to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

### COUNT X
### Collective Action under § 216(b) of the FAIR LABOR STANDARDS ACT
### PM Minimum Wage Claims

256.    Plaintiff Seguna hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

46

257.    The FLSA requires employers, such as Defendants, to pay employees the minimum wage for all hours worked.

258.    During the applicable statute of limitations, Defendants have failed to pay Plaintiff Seguna and members of the PM FLSA Collective the legally mandated minimum wage for all hours worked.

259.    The foregoing conduct, as alleged herein, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

260.    Plaintiff Seguna, on behalf of himself and the PM FLSA Collective, seek damages in the amount of all respective unpaid minimum wage compensation at minimum wage rate effective during the applicable work week, plus liquidated damages, as provided by the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems just and proper.

261.    Plaintiff Seguna, on behalf of himself and the PM FLSA Collective, seek recovery of all attorneys' fees, costs, and expenses of this action, to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

### COUNT XI
#### FED.R.CIV.P. 23 Class Action under
#### ILLINOIS MINIMUM WAGE LAW, 820 ILCS 105/1 *ET SEQ.*
#### PM MINIMUM WAGES

262.    Plaintiff Seguna hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

263.    Defendants engaged in a widespread pattern, policy, and practice of violating the IMWL, as detailed above in this Collective and Class Action Complaint.

264.    Plaintiff Seguna and the Rule 23 PM Illinois IMWL Class are not exempt from the minimum wage provisions of the IMWL.

47

265.   Defendants failed to pay Plaintiff Seguna and the Rule 23 PM Illinois IMWL Class Members the minimum wages to which they are entitled in violation of the IMWL.

266.   Pursuant to 820 ILCS 105/12(a), Plaintiff Seguna and the Rule 23 PM Illinois IMWL Class Members are entitled to recover statutory damages in the amount of five percent (5%) per month of the amount of the underpayments occurring on and after February 19, 2019.

267.   As a result of Defendants' violations of the IMWL, Plaintiff Seguna and the Rule 23 PM Illinois IMWL Class Members have suffered damages by being denied minimum wages in accordance with the IMWL in amounts to be determined at trial, and are entitled to recovery of all such amounts, statutory damages, attorneys fees and costs, and such other and further relief the court deems appropriate and just.

**COUNT XII**
**FED.R.CIV.P. 23 Class Action under**
**Illinois Minimum Wage Law, 820 ILCS 105/1 ET SEQ.**
**PM Overtime Wages**

268.   Plaintiff Seguna hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

269.   Defendants engaged in a widespread pattern, policy, and practice of violating the IMWL, as detailed above in this Collective and Class Action Complaint.

270.   Plaintiff Seguna and the Rule 23 PM Illinois IMWL Class are not exempt from the overtime provisions of the IMWL.

271.   Defendants failed to pay Plaintiff Seguna and the Rule 23 PM Illinois IMWL Class Members the overtime wages to which they are entitled in violation of the IMWL.

272.   Pursuant to 820 ILCS 105/12(a), Plaintiff Seguna and the Rule 23 PM Illinois IMWL Class Members are entitled to recover statutory damages in the amount of five percent (5%) per month of the amount of the underpayments occurring on and after February 19, 2019.

273. As a result of Defendants' violations of the IMWL, Plaintiff Seguna and the Rule 23 PM Illinois IMWL Class Members have suffered damages by being denied overtime wages in accordance with the IMWL in amounts to be determined at trial, and are entitled to recovery of all such amounts, statutory damages, attorneys fees and costs, and such other and further relief the court deems appropriate and just.

**COUNT XIII**
**Collective Action under §216(b) of the FAIR LABOR STANDARDS ACT**
**Loan Processor Overtime Claims**

274. Plaintiff Pier hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

275. The FLSA requires each covered employer such as Defendants to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per work week.

276. Plaintiff Pier and the Loan Processor FLSA Collective are entitled to be paid overtime compensation for all hours worked because they failed to perform any job duties which qualify them for any FLSA exemption.

277. Defendants, pursuant to their policies and practices, failed and refused to pay overtime premiums to Plaintiff Pier and the Loan Processor FLSA Collective for all of their hours worked.

278. Defendants violated the FLSA, 29 U.S.C. § 201 *et seq*. by failing to compensate Plaintiff Pier and the Loan Processor FLSA Collective for all overtime compensation.

279. By failing to record, report, and/or preserve accurate records of hours worked by Plaintiff Pier and the Loan Processor FLSA Collective, Defendants failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their

wages, hours, and other conditions and practice of employment, in violation of the FLSA, 29 U.S.C. § 201 *et seq.*

280.     The foregoing conduct, as alleged herein, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

281.     Plaintiff Pier, on behalf of herself and the Loan Processor FLSA Collective, seeks damages in the amount of all respective unpaid overtime compensations at a rate of one and one-half times the regular rate of pay for work performed in excess of forty hours in a work week, plus liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems just and proper.

282.     Plaintiff Pier, on behalf of herself and the Loan Processor FLSA Collective seek recovery of all attorneys' fees, costs, and expenses of this action, to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

## COUNT XIV
### Collective Action under § 216(b) of the FAIR LABOR STANDARDS ACT
### Loan Processor Minimum Wage Claims

283.     Plaintiff Pier hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

284.     The FLSA requires employers, such as Defendants, to pay employees the minimum wage for all hours worked.

285.     During the applicable statute of limitations, Defendants have failed to pay Plaintiff Pier and members of the Loan Processor FLSA Collective the legally mandated minimum wage for all hours worked.

286.     The foregoing conduct, as alleged herein, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

287. Plaintiff Pier, on behalf of herself and the Loan Processor FLSA Collective, seek damages in the amount of all respective unpaid minimum wage compensation at minimum wage rate effective during the applicable work week, plus liquidated damages, as provided by the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems just and proper.

288. Plaintiff Pier, on behalf of herself and the Loan Processor FLSA Collective, seek recovery of all attorneys' fees, costs, and expenses of this action, to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

<u>COUNT XV</u>
FED.R.CIV.P. 23 Class Action under
ILLINOIS MINIMUM WAGE LAW, 820 ILCS 105/1 *ET SEQ.*
Loan Processor MINIMUM WAGES

289. Plaintiff Pier hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

290. Defendants engaged in a widespread pattern, policy, and practice of violating the IMWL, as detailed above in this Collective and Class Action Complaint.

291. Plaintiff Pier and the Rule 23 Loan Processor Illinois IMWL Class are not exempt from the minimum wage provisions of the IMWL.

292. Defendants failed to pay Plaintiff Pier and the Rule 23 Loan Processor Illinois IMWL Class Members the minimum wages to which they are entitled in violation of the IMWL.

293. Pursuant to 820 ILCS 105/12(a), Plaintiff Pier and the Rule 23 Loan Processor Illinois IMWL Class Members are entitled to recover statutory damages in the amount of five percent (5%) per month of the amount of the underpayments.

294. As a result of Defendants' violations of the IMWL, Plaintiff Pier and the Rule 23 Loan Processor Illinois IMWL Class Members have suffered damages by being denied minimum

wages in accordance with the IMWL in amounts to be determined at trial, and are entitled to recovery of all such amounts, statutory damages, attorneys fees and costs, and such other and further relief the court deems appropriate and just.

**COUNT XVI**
**FED.R.CIV.P. 23 Class Action under**
**Illinois Minimum Wage Law, 820 ILCS 105/1 ET SEQ.**
**Loan Processor Overtime Wages**

295. Plaintiff Pier hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

296. Defendants engaged in a widespread pattern, policy, and practice of violating the IMWL, as detailed above in this Collective and Class Action Complaint.

297. Plaintiff Pierand the Rule 23 Loan Processor Illinois IMWL Class are not exempt from the overtime provisions of the IMWL.

298. Defendants failed to pay Plaintiff Pier and the Rule 23 Loan Processor Illinois IMWL Class Members the overtime wages to which they are entitled in violation of the IMWL.

299. Pursuant to 820 ILCS 105/12(a), Plaintiff Pier and the Rule 23 Loan Processor Illinois IMWL Class Members are entitled to recover statutory damages in the amount of five percent (5%) per month of the amount of the underpayments.

300. As a result of Defendants' violations of the IMWL, Plaintiff Pier and the Rule 23 Loan Processor Illinois IMWL Class Members have suffered damages by being denied overtime wages in accordance with the IMWL in amounts to be determined at trial, and are entitled to recovery of all such amounts, statutory damages, attorneys fees and costs, and such other and further relief the court deems appropriate and just.

## COUNT XVII
### FED.R.CIV.P. 23 Class Action under
### Illinois Wage Payment and Collection Act 820 ILCS 115/1 ET SEQ.
### Unpaid Vacation Pay

301.   Plaintiff Pier hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

302.   Defendants engaged in a widespread pattern, policy, and practice of violating the IWPCA, as detailed above in this Collective and Class Action Complaint.

303.   Plaintiff Pier and the Rule 23 Unpaid Vacation Class are entitled to be paid their accrued, unused vacation in accordance with Defendants' vacation policy, and 820 ILCS § 115/5 and 56 Ill. Admin. Code § 300.520.

304.   Defendants failed to pay Plaintiff Pier and the Rule 23 Unpaid Vacation Class Members the accrued, unused vacation pay to which they are entitled when they left Defendants in violation of the IWPCA.

305.   Pursuant to the IWPCA, Plaintiff Pier and the Rule 23 Unpaid Vacation IMWL Class Members are entitled to recover statutory damages in the amount of five percent (5%) per month of the amount of the underpayments until Defendants pay the amounts due.

306.   As a result of Defendants' violations of the IWPCA, Plaintiff Pier and the Rule 23 Unpaid Vacation Class Members have suffered damages by being denied vacation pay in accordance with the IWPCA in amounts to be determined at trial, and are entitled to recovery of all such amounts, statutory damages, attorneys fees and costs, and such other and further relief the court deems appropriate and just.

**WHEREFORE,** Plaintiffs, on behalf of themselves and all members of the FLSA Collectives and Rule 23 Illinois Classes, pray for relief as follows:

A. Designation of this action as a collective action on behalf of the MLO FLSA Collective, the NPM FLSA Collective, the PM FLSA Collective, and the Loan Processor FLSA Collective, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA Collectives, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Join forms pursuant to 29 U.S.C. § 216(b);

B. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and issuance of notice pursuant to all MLO Illinois Class Members, NPM Illinois Class Members, PM Illinois Class Members, Loan Processor Class Members, and Unpaid Vacation Class Members apprising them of the pendency of this action;

C. A declaration that Defendants are financially responsible for notifying the FLSA Collectives and the Rule 23 Illinois Classes of Defendants' alleged wage and hour violations;

D. Judgment against Defendants for an amount equal to Plaintiffs,' each FLSA Collective's, and each Rule 23 Class's unpaid minimum wages and overtime wages at the applicable rates;

E. A finding that Defendants' conduct was willful;

F. An equal amount to the minimum wages and overtime wages as liquidated damages;

G. Statutory damages due under the IMWL and/or IWPCA;

H. All costs and attorney' fees incurred prosecuting these claims, including expert fees;

I. Pre-judgment and post-judgment interest, as provided by law;

J. Leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and

K. Such further relief as the Court deems just and equitable.

**Demand for Jury Trial**

Plaintiffs, individually and on behalf of all others similarly situated, hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial pursuant to Federal Rule of Civil Procedure 38(b).


Dated: March 6, 2025                          Respectfully submitted,

*/s/ Rowdy B. Meeks*                           */s/ Kenneth C. Apicella*
Rowdy B. Meeks, N.D. Ill #16068               Kenneth C. Apicella, N.D. Ill #6269344
**Rowdy Meeks Legal Group LLC**               **Drost, Gilbert, Andrew & Apicella, LLC**
8201 Mission Road, Suite 100                  4811 Emerson Ave Suite 110
Prairie Village, Kansas 66208                 Palatine, Illinois 60067
Tel:  (913) 766-5585                          Tel:  (847) 934-6000
Fax:  (816) 875-5069                          Fax:  (847) 934-6040
Rowdy.Meeks@rmlegalgroup.com                  KCA@dgaalaw.com
www.rmlegalgroup.com                          www.dgaalaw.com

*/s/ Brendan J. Donelon*
Brendan J. Donelon, Ill. 43901
DONELON, P.C.
4600 Madison, Suite 810
Kansas City, Missouri 64112
Tel:     (816) 221-7100
Fax:     (816) 709-1044
brendan@donelonpc.com

Attorneys for Plaintiffs