IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINA FISCHER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 25-cv-2410 |
| v. | ) | |
| | ) | Honorable Joan B. Gottschall |
| ALLIED FIRST BANK, S.B., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Four plaintiffs, Christina Fischer,[1] Renard Batu, Anthony Seguna, and Leslie Pier, filed this proposed collective and class action against their employer, a national consumer bank which the court will refer to as Allied First Bank.[2] Plaintiffs bring claims under the Fair Labor Standards Act of 1938, as amended (FLSA), 29 U.S.C. §§ 201 *et seq.*, and related state laws. They allege that Allied First Bank misclassified them as commission-only employees exempt from the FLSA's overtime compensation mandate. *See generally* Compl. ¶¶ 1–27, Dkt. No. 1; 29 U.S.C. § 207. Before the court is plaintiffs' motion to send court-approved notice to four proposed groups of employees, *i.e.*, collectives, in accordance with the FLSA's procedures. Dkt. No. 55; *see* Mem. Supp. Mot. to Send Notice 5–13, Dkt. No. 56; 29 U.S.C. § 216(b). In opposition, Allied First Bank argues that plaintiffs have not carried their burden under the Seventh Circuit's recently clarified standard for sending notice to a proposed collective. *See Richards v. Eli Lilly & Co.*, 149 F.4th 901 (7th Cir. 2025), *cert. denied*, 2026 WL 79908 (Jan. 12, 2026). For the reasons discussed herein, plaintiffs' motion is granted.

---

[1] The complaint spells the lead plaintiff's first name as "Christian." All subsequently filed documents employ the spelling "Christina," including her opt-in notice. Dkt. No. 21 at 3.

[2] The complaint names four defendants: Allied First Bank, S.B.; Allied First Bancorp, Inc.; Servbank, SB; and Servbank Holdco, Inc. *See* Compl. ¶¶ 34–37, Dkt. No. 1.

## I. BACKGROUND

### A. Legal background and The Salary Basis Test

By way of context for the parties' arguments, the FLSA includes several exemptions from the requirement to pay overtime compensation for hours worked in excess of forty per week. *See, e.g.*, 29 U.S.C. § 213. The salary basis test at issue in the parties' briefing exists as a regulatory implementation, dating to 1940, of the FLSA's exemption for bona fide executives. *See generally Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 44–47 (2023). To be precise, that exemption provides that an employee who works in a "a bona fide executive, administrative, or professional capacity," as those "terms are defined" by agency regulations, is not entitled to overtime compensation. 29 U.S.C. § 213(a)(1). Allied First Bank raises this exemption as a defense, and it bears the burden to prove that the exemption applies. *See* Ans. 22–23, Dkt. No. 31; *Demos v. City of Indianapolis*, 302 F.3d 698, 701 (7th Cir. 2002).

The test used to determine whether the bona fide executive exemption applies "has three elements: (a) the salary basis test, (b) the employee's classification as professional, administrative, or executive, and (c) the employee's duties test." *Demos*, 302 F.3d at 701 (citing regulations); *accord Helix Energy Sols.*, 598 U.S. at 45. Broadly speaking, the salary basis test ensures that "an employee can be a bona fide executive only if he receives a 'predetermined and fixed salary'—one that does not vary with the precise amount of time he works." *Helix Energy Sols.*, 598 U.S. at 45 (quoting 84 Fed. Reg. 51230 (2019)). The minimum weekly salary the salary basis test guarantees depends on the employee's total annual compensation. *See* 29 C.F.R. §§ 541.100, 541.600. If total annual compensation is at least $107,432, the salary basis test asks whether the employee receives $684 per week in salary.[3] 29 C.F.R. § 541.601(a). Importantly for the parties here, for purposes of the salary basis test, total annual compensation includes all of the ways in which the employee is paid—commissions, bonuses, etc. *Helix Energy Sols.*, 598

---

[3] Effective January 1, 2025, the Department of Labor amended the applicable regulations to increase the total annual compensation required to trigger the salary basis test to $151,164. *See* 89 Fed. Reg. 32854 (Apr. 26, 2024). Those regulations have been vacated by a federal district court. *See Texas v. United States*, 756 F.Supp.3d 361 (E.D. Tex. 2024).

U.S. at 45 (quoting 84 Fed. Reg. at 51230). On the other hand, the $684 required weekly salary must be paid "regularly each period . . . a predetermined amount . . . which amount is not subject to variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). As discussed below, plaintiffs in the case at bar maintain that members of the proposed collectives are similarly situated such that the salary basis test can be applied across the board.

**B. Procedural History and Evidence before the Court**

The parties inform the court that some of the plaintiffs here missed the deadline to participate in the settlement of a wage-and-hour suit over which Judge Kocoras presided. *See* Mot. Leave Send Notice 7, Dkt. No. 55. That case was settled, with court approval, and was dismissed in February 2024. *See Gabe v. Allied First Bank, S.B.*, No. 23-cv-914, Final Approval Order at 1 (N.D. Ill. Feb. 13, 2024) (Dkt. No. 58). The docket sheet of Judge Kocoras's case confirms that neither FLSA conditional certification nor Federal Rule of Civil Procedure 23 class certification was litigated.

After the four named plaintiffs commenced this case, twenty-three current or former Allied First Bank employees[4] filed "opt-in" notices consenting to join this lawsuit. *See* Opt-In Notices, Dkt. Nos. 18 to 24, 28, 57; 29 U.S.C. § 216(b). Some of these notices are duplicates. In all, twenty-seven individuals joined as plaintiffs.

In support of their motion to send notice, plaintiffs attach the declarations of twelve plaintiffs. *See* Dkt. No. 56–1 (exhibit list); Exs. B–D, F–N. Each declarant plaintiff avers that he or she works or worked for Allied First Bank in one of various offices in Illinois, Maryland, Michigan, and California.[5] Each plaintiff held one of four job titles: Mortgage Loan Originator, or MLO; Non-Producing Team Manager, or NPM; Producing Team Manager, or PM; Loan

---

[4] Two notices appear to be duplicates, two opt-in notices signed by plaintiffs William DeSantis II and Ilian Elia. *See* Dkt. Nos. 20, 22 (DeSantis); Dkt. Nos. 24, 57 (Elia).

[5] The declarations reflect that the following pairs of plaintiffs worked in the same Allied First Bank office: Matthew Jones and John Porricelli (Parkton, Maryland); Bret Springer and Erica Evans (Forest Hill, Maryland); and Ashley Roberts and Bryan McCrea (White Marsh, Maryland). In addition, plaintiff Soren Carlson's declaration states that the declarant worked in "MD" but does not specify further. *See* Pl. Ex. K ¶ 2, Dkt. No. 56-12. The parties do not argue that these overlaps in work locations affect the analysis of the pending motion.

3

Processor, or "processor". Each plaintiff further avers that he or she often worked more than forty hours per week, but Allied First Bank did not pay the plaintiff overtime compensation. *See, e.g.*, Roberts Decl. ¶¶ 4–5, Dkt. No. 56-15, Ex. N; Jones Decl. ¶¶ 4–5, Dkt. No. 56-14, Ex. M; Evans Decl. ¶ 5, Dkt. No. 56-13, Ex. L. Instead, declarants aver that they were paid based on either the number of loans closed by others in the office or on commissions presumptively tied to the value of loans closed in a given time period. *Compare* Roberts Decl. ¶ 4, Dkt. No. 56-15, Ex. N ("Any compensation beyond my set salary was tied directly to the number of loans closed by the loan officers I assisted."), *with* Shmoldas Decl. ¶ 4, Dkt. No. 56-11 Ex. J ("I was paid on a pure commission basis.").

Plaintiffs submit two additional exhibits in support of their pending motion. Exhibit E is entitled Non-Producing Team Manager Agreement, which plaintiffs cite once to support their argument that NPMs were not compensated in accordance with the FLSA. *See* Mem. Supp. Mot. to Send Notice 8, Dkt. No. 56 (citing Ex. E ¶ 3). Exhibit P consists of the declaration of plaintiffs' expert, Dr. Liesl Fox. *See* Dkt. No. 56-16, Ex. O. A specialist in data analysis and statistics, Dr. Fox avers that she reviewed "pay data" for sixteen plaintiffs.[6] The Fox declaration quotes FLSA regulations establishing the salary basis test and states:

> The pay data produced to me for the employees set forth above was, in many instances, provided only as year-end pay stubs. For those individual years, it was not possible to determine the salaried amounts paid for each pay period. Additionally, some records that were provided on a pay-period basis showed that the only form of compensation for the pay period was from commissions. Therefore, I did not see records in the pay data produced to me that indicated the "salary basis" requirements as set forth in paragraph 5 above were met by the Defendants.

For its part, Allied First Bank submits nine exhibits with its response memorandum. *See* Dkt. No. 61. Each exhibit consists of a written employment agreement with one of the opt-in

---

[6] Some of the names in paragraph four of Fox's declaration differ in spelling from the opt-in notices, such as Ranna Mikah versus Ranna Salem, and Vincent Katty versus Vince Katty. Although these discrepancies have not been explained, they are immaterial and the court, for present purposes, presumes that the sixteen persons named in paragraph four of Fox's declaration refer to opt-in plaintiffs.

plaintiffs.  The exhibits reflect differences in the specific plaintiffs' duties, locations, and compensation structure.  The following chart synopsizes them:

| Name | Position/s | Location | Compensation |
|---|---|---|---|
| **Bryan McCrea** (Dkt. No. 61-1) | MLO/NPM | Forest Hill, MD | $2,000–$25,000 per pay period, plus commission |
| **John Porricelli** (Dkt. No. 61-2) | PM | Denver, CO | $2,000–$15,000 per pay period |
| **William DeSantis** (Dkt. No. 61-3) | NPM | Cockeysville, MD | $24,000 annual |
| **Soren Carlsen** (Dkt. No. 61-4) | MLO/PM | Parkton, MD | $1,000–$20,000 per pay period, plus commission |
| **Andre Shmoldas** (Dkt. No. 61-5) | MLO/PM | Del Mar, CA | Commission only |
| **Derek Scarborough** (Dkt. No. 61-6) | Processor | N/A | $500 per closed/funded loan (maximum compensation per funded loan: $8,000), plus monthly and quarterly discretionary bonuses |
| **Gino Yatouma** (Dkt. No. 61-7) | MLO/Telemarketer | Sterling Heights, MI | N/A |
| **Bret Springer** (Dkt. No. 61-8) | MLO/NPM | N/A | "Salary: $2,000.00" |

| **Ashley Roberts** (Dkt. No. 61-9) | Processor | N/A | $15.62/hr; maximum of $200/file |
| --- | --- | --- | --- |

## II. STANDARD FOR SENDING NOTICE

"Congress enacted the FLSA to eliminate both 'substandard wages' and 'oppressive working hours.'" *Helix Energy Sols.*, *supra*, 598 U.S. at 44 (quoting *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)). In 1947, Congress passed the Portal-to-Portal Act, which added language to the FLSA requiring an employee to consent in writing before becoming a plaintiff in an FLSA collective action. *See* Portal-to-Portal Act of 1947, 61 Stat. 84 § 5; *see also Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989) (discussing the purpose and history of this amendment).

The FLSA provides:

> An action to recover the liability prescribed in [the FLSA] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Since an opt-in is required, the procedures and standards governing FLSA collective actions differ from those applicable to opt-out class actions governed by Rule 23 of the Federal Rules of Civil Procedure. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013); *Hoffmann-La Roche*, 493 U.S. at 169–70, 173.

In *Richards*, *supra*, the Seventh Circuit clarified the framework for deciding whether to send notice in a putative FLSA collective action.[7] The plaintiff in *Richards* alleged that her employer discriminated against her because of her age when it denied her a promotion to a

---

[7] The Seventh Circuit decided *Richards* while briefing on plaintiffs' motion for conditional certification was underway. This court ordered re-briefing in light of *Richards*. Min. Order. Aug. 15, 2025, Dkt. No. 48. Though plaintiffs discuss *Richards* in their briefing, they apply it separately to the four proposed collectives. Allied First Bank argues that the four proposed collectives lack a common connection. Resp. Opp. Mot. to Send Notice 8–13, Dkt. No. 60.

district sales director position and hired a younger employee. *Richards*, 149 F.4th at 908. The Age Discrimination in Employment Act incorporates the FLSA's collective-action procedure, so Richards moved for conditional certification allowing her to send notice of her lawsuit to a group of allegedly similarly situated employees. "The time has come," the *Richards* court stated, "for us to offer clearer guidance on the proper facilitation of notice" in FLSA collective actions. *Id.* at 909; *see id.* at 909–10.

Richards does three things. First, it makes clear that district courts should not utilize the two-step conditional certification procedure commonly called the *Lusardi* standard. *Id.* at 910–11 (discussing *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 361 (D.N.J. 1987)). The opinion in *Richards* states that, while the Seventh Circuit was not "categorically disapprov[ing] every decision that permitted notice with a citation to *Lusardi*," *Lusardi*'s one-sided approach to conditional certification, focusing on the plaintiff's evidence without weighing against any evidence produced by the defense, "inevitably conflicts with a district court's obligation to 'maintain neutrality and to shield against abuse of the collective-action device.'" *Id.* at 911 (quoting *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 (7th Cir. 2020)).

Second, *Richards* rejects as unworkable and incompatible with Supreme Court caselaw two standards for sending notice. After *Richards*, an FLSA plaintiff need not prove substantial similarity by either a preponderance of the evidence or by showing a strong likelihood of similarity among members of the proposed collective. *Id.* at 911 (citing *Hoffmann-La Roche*, 493 U.S. at 173). Recalling the Supreme Court's admonition that the FLSA's "broad remedial goal . . . should be enforced to the full extent of its terms," *id.* at 912 (quoting *Hoffman-La Roche*, 409 U.S. at 173), the Seventh Circuit determined that requiring proof of similarity by either of the foregoing standards would in some cases erect an insuperable barrier to notice for FLSA plaintiffs because evidence of similarity sometimes resides with plaintiffs who have yet to be joined in the lawsuit. *Id.* at 911–12 (citation and quotation omitted).

Third, *Richards* establishes a framework for deciding whether to send notice to potential opt-in plaintiffs. *Id.* at 913. "[T]o secure notice, a plaintiff must first make a threshold showing

7

that there is [at least] a material factual dispute as to whether the proposed collective is similarly situated," meaning that a plaintiff must produce "some evidence suggesting" that the plaintiff "and the members of the proposed collective are victims of a common unlawful employment practice or policy."[8]  *Id.*  In contrast with the *Lusardi* approach, any rebuttal evidence the defendant offers must also be considered along with "the extent to which plaintiffs engage with opposing evidence." *Id.*  Furthermore, the *Richards* court stressed that making an initial showing does not automatically entitle a plaintiff to the sending of notice. *Id.*  "Once the district court is satisfied that there is at least a material dispute, the decision to issue notice will depend on its assessment of the factual dispute before it," an assessment that involves the exercise of the district court's sound judgment. *Id.*

### III. ANALYSIS

Allied First Bank argues that plaintiffs have failed to identify a policy or practice common to the four proposed collectives.  Plaintiffs contend that "all four collectives were treated as exempt and not paid overtime," Reply 3, and that "[f]ailure to meet [the FLSA] salary-basis test" is a common policy or practice linking the four proposed subclasses.  Reply 5.

The *Richards* inquiry begins by asking whether plaintiffs have produced "some evidence" that the proposed collective was subjected to a common policy or practice.  *See Richards*, 149 F.4th at 912–13.  In her declaration, the key averments of which are quoted above, Dr. Fox avers that she analyzed a set of records for certain plaintiffs produced by Allied First Bank.  *See* Fox. Decl. ¶¶ 4–5.  She found insufficient evidence to support Allied First Bank's exemption defense because the records did not establish that the salary basis test was satisfied, *i.e.*, that the employee received at least $684 per week in salary as defined by the FLSA's implementing regulations.  *See* Fox Decl. ¶ 6.

---

[8] *Richards* uses the phrase "material factual dispute," which echoes language familiar from summary judgment practice where the issue is whether a trial should be held.  *See* Fed. R. Civ. P. 56.  It is abundantly clear, however, from the *Richards* opinion that the threshold burden a plaintiff must carry to send notice to a proposed FLSA collective is considerably less onerous than the requirements imposed by the Rule 56 summary judgment standard. *See generally Richards*, 149 F.4th at 911–14.

Allied First Bank does not dispute the correctness of Dr. Fox's analysis, but it argues that her findings should not be extrapolated to the entire collective. It is true that Dr. Fox did not review pay records corresponding to every employee who has opted into this lawsuit. But Allied First Bank bears the burden to prove that the bona fide executive exemption, of which the salary basis test is an element, applies, making Dr. Fox's reliance on the subset of pay records Allied First Bank elected to produce reasonable and evidentiarily sufficient at this procedural stage. *See Richards*, 149 F.4th at 913.

The Fox declaration need not opine as to every plaintiff who has opted in to raise a material dispute as to whether Allied First Bank had a policy or practice of denying overtime compensation to the members of the entire proposed collective, even though the salary basis test was not met. *See* Fox Decl. ¶¶ 4–6. That would effectively require plaintiffs to prove their case before the notice stage. The threshold burden *Richards* imposes at the notice stage is lighter than preponderance of the evidence and lighter than strong likelihood of similarity. *Richards*, 149 F.4th at 912. Dr. Fox's declaration carries plaintiffs' modest initial burden to identify "some evidence" suggesting that the plaintiff "and the members of the proposed collective are victims of a common unlawful employment practice or policy." *Id.*; *see Gower v. Roundy's Supermarkets Inc.*, 2025 WL 3537391, at *3, 4 (N.D. Ill. Dec. 10, 2025); *Sims v. Am. Heritage Protective Servs., Inc.*, 2025 WL 3240900, at *3 (N.D. Ill. Nov. 20, 2025).

Next, the court considers Allied First Bank's rebuttal evidence, paying attention to the extent to which plaintiffs "engage[ ] with" the employer's evidence. *Richards*, 149 F.4th at 911. As explained in detail above, plaintiffs focus on the salary basis test, which is only one of the three elements that Allied First Bank must show to establish that the bona fide executive exemption of 29 U.S.C. § 213(a)(1) covers members of the putative collective: "(a) the salary basis test, (b) the employee's classification as professional, administrative, or executive, and (c) the employee's duties test." *Demos*, *supra*, 302 F.3d at 701 (citing regulations); *accord. Helix Energy Sols.*, 598 U.S. at 45. Allied First Bank's evidence focuses on the other two elements of the exemption. It submits nine employment agreements showing variations in the terms of

9

plaintiffs' duties, classifications, and compensation structures. *See* Dkt. No. 61 Ex. A–I. The terms reflected in Allied First Bank's exhibits are summarized in the chart, *supra.*

Plaintiffs and Allied First Bank effectively talk past each other, engaging with different elements of the exemption. This does not defeat plaintiffs' motion to send notice, however, because each and every element of the exemption must be proven for Allied First Bank to make out its defense. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974). Here, plaintiffs have made a preliminary showing that one element, the salary basis test, can be applied across the entire collective, and there may be no need to analyze the duties and classification elements if that is so. Given the burden of proof on the bona fide executive exemption, plaintiffs' non-engagement with Allied First Bank's arguments and evidence concerning the second and third prongs of the § 213(a) exemption analysis does not bar sending notice here. *See Richards*, 149 F.4th at 911; *see also Dobrov v. Hi-Tech Paintless Dent Repair, Inc.*, 2025 WL 2720663, at *5 (N.D. Ill. Sept. 24, 2025).

Finally, to the extent Allied First Bank argues that differences among the four proposed collectives' classification and duties will stymie efficient adjudication, plaintiffs' suggestion of subclassing sufficiently answers this concern at this stage. Subclassing may be used to manage FLSA collective actions in appropriate circumstances to preserve the efficiencies to be gained by collective adjudication. *See Alvarez v. City of Chicago*, 605 F.3d 445, 448–50 (7th Cir. 2010). This does not necessarily mean subclassing will occur. For one thing, if the salary basis test can be applied across the board, subclassing may be unnecessary.

For another, the parties have assembled a thin record covering the employment agreements of nine opt-in plaintiffs, the declarations of others, and Dr. Fox's analysis of certain pay records Allied First Bank has produced. As *Richards* explains, "[T]he evidence necessary to establish similarity [sometimes] resides with yet-to-be-noticed plaintiffs." *Richards*, 149 F.4th at 911 (citing *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1010 (6th Cir. 2023)). Once notice has been sent, the composition of the collective will be known, and evidence of the duties, classification, and compensation in the hands of opt-in plaintiffs will be

10

available to the parties and the court. This court exercises its discretion to engage in a two-step notification process and defers a final certification decision, including on subclassing, until after notice has been sent and members of the proposed collectives have had an opportunity to opt in and be joined as plaintiffs. *See id.; Gower*, 2025 WL 3537391, at *5.

For the reasons stated, plaintiffs' motion to send notice to the proposed collectives, Dkt. No. 55, is granted. The parties are instructed to file on the docket a proposed order authorizing notice. The proposed order, which is due on or before May 14, 2026, must be consistent with the court's rulings. The proposed order should also be sent to Proposed_Order_Gottschall@ilnd.uscourts.gov.

Date: May 7, 2026

/s/ Joan B. Gottschall
United States District Judge

11